THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

Western Division
Civil Action No.:  03-cv-30314-MAP

-----------------------------------

KAREN KAROWSKI, Plaintiff,

v.

ERIC CERRETA, DAVID HASKELL, CHRISTOPHER MORRIS, and THE
INHABITANTS OF THE TOWN OF WILLIAMSBURG, Defendants.

=========================================================

OPPOSITION OF PLAINTIFF, KAREN KAROWSKI, TO MOTION OF SEAN
REAGAN TO QUASH DEPOSITION SUBPOENA

=========================================================

**Introduction.**

This matter comes before the Court upon the motion of a
non-party journalist who has moved to quash a deposition
subpoena which the plaintiff has served upon him.

**Opposition.**

The plaintiff opposes the motion and respectfully asks this
Honorable Court to deny the motion.

In the alternative, the plaintiff respectfully asks this
Honorable Court to condition the movant's deposition upon the
terms and conditions set forth in a letter from plaintiff's
attorney, Harry L. Miles, to the movant's attorney, Benjamin

1

Barnes, dated December 13, 2004, a copy of which is attached hereto, incorporated herein by reference, and marked as "A."

**Memorandum of Law in Opposition to Reagan's Motion.**

**Statement of Facts.**

For the purpose of this opposition only, the plaintiff accepts as true the facts stated in the Affidavit of Sean Reagan ("Reagan's Affidavit") filed with the Motion of Reporter Sean Reagan to Quash a Deposition Subpoena, paragraphs one through eleven only. The plaintiff disputes the conclusory statements contained in paragraph twelve of Reagan's Affidvit.

**Issue Presented.**

Does the First Amendment to the United States Constitution protect a journalist who witnesses events relevant to the plaintiff's claims from a deposition at which he is questioned as a percipient witness about material which he published before the deposition?

**Argument.**

The First Amendment To The United States Constitution Does Not Preclude The Deposition Of A Journalist Who Witnesses And Publishes Material Relevant To The Claims Or Defenses Of A Party To Litigation.

Although a close analysis of *Branzburg v. Hayes,* 408 US 665, 732, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), and its progeny might prove both educational and entertaining, the facts of this case make it unnecessary. The plaintiff does not seek to expose

2

the journalist's confidential sources. The plaintiff does not seek access to "journalistic resources." Compare, *Gonzales v. Nat'l Broadcasting Co., Inc.,* 194 F.3d 29, 35 (2nd Cir.1999) [The Second Circuit balances the litigant's need for a journalist's nonconfidential, unpublished material against the interference with the newsgathering function,] *with Shoen v. Shoen*, 48 F.3d 412, 415-416 (9th Cir. 1995) [discussing compelled disclosure of research materials,] and *United States v. Cuthbertson,* 630 F.2d 139, 147 (3rd Cir. 1980) [discussing compelled disclosure of a reporter's resource materials.] Both the plaintiff and the journalist agree that the plaintiff only seeks the journalist's testimony about circumstances and conversations he observed and published at various public meetings of the Board of Selectmen of the defendant Town of Williamsburg. See *Memorandum of Law in Support of Motion to Quash* ("Reagan's Memorandum"), at 6-7. The First Circuit has not spoken on this issue.

The three leading decisions of the First Circuit protect against the compelled disclosure of a journalist's confidential sources and unpublished material. *In Re Special Proceedings*, 373 F.3d 37, 45 (1st Cir. 2004)[disclosure of identity of reporter's source of sealed videotape compelled]; *Cusumano v. Microsoft Corp.,* 162 F.3d 708 (1st Cir.1998)[academic pre-publication

research protected]; *United States v. LaRouche Campaign,* 841
F.2d 1176 (1st Cir.1988) [outtakes of network films compelled];
*Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583 (1st
Cir.1980) [disclosure of confidential sources and their
information protected]. However, the First Circuit has not
opined on the degree of protection, if any, afforded published
perceptions of journalists who are percipient witnesses.

### Relevance of Journalist's Perceptions.

The proposed deponent attended several meetings of the
Board of Selectmen of the Defendant Town of Williamsburg. He was
a percipient witness to statements the various defendant
Selectmen made about their reason for not reappointing the
plaintiff to her position as Police Secretary. The proposed
deponent published some of the statements verbatim and others in
substance. See Reagan's Affidavit, Exhibits A-D. The motivation
of each defendant Selectman bears on liability and qualified
immunity. See, e.g., *Boyle v. Burke*, 925 F. 2d 497 (1st Cir.
1991); *Mount Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429
U.S. 974 (1977). In addition, the existence of a pattern and
practice of retaliating against individuals for their public
criticism of the manner in which the Selectboard carried out its
functions goes to the plaintiff's *Monell* claim[1].

---

[1] See, *Haydon v. Grayson,* 134 F.3d 449, 456 n. 13 (1st Cir. 1998) and cases and
authorities cited for an analysis of the elements of a *Monell* claim.

Although First Circuit has not addressed the question of whether the availability of information from other sources is a balancing factor when the information sought is nonconfidential and published, each of the defendant Selectmen has a cloudy, if not nonexistent, memory of having made the statements the proposed deponent attributes to him. Deposition of defendant Cerreta, at 79-83, a copy of which is attached hereto, incorporated herein by reference, and marked as "B;"[2] deposition of defendant Morris, at 49-51, a copy of which is attached hereto, incorporated herein by reference, and marked as "C;" deposition of defendant Haskell, at 94-98, a copy of which is attached hereto, incorporated herein by reference, and marked as "D."

Under the circumstances, the proposed deposition will not impinge upon the reporter's ability to gather news. The proposed deponent, Mr. Reagan, fails to provide the Court with any specific instances in which the legal process has interfered with his news gathering. Reagan's Affidavit, ¶12. He cannot quantify the "considerable burden" to which answering this subpoena would subject him. He does not point to any other instance in which his attendance at a public meeting subjected him to attend court or a deposition. He does not explain why the

---

[2] The stenographer incorrectly captioned the depositions.

Court should protect him more extensively than it protects any other percipient witness who has to respond to a subpoena at his own time and expense. The interrogation will not involve resources, confidential sources or nonconfidential, unpublished material. On the other hand, the expected evidence will aid the trier of fact and the Court to determine issues in controversy in this case. On balance, the plaintiff is entitled to the benefit of Mr. Reagan's testimony.

**Conclusion.**

The Court should deny Mr. Reagan's motion.

Dated at Northampton, January 31, 2005.

Respectfully submitted,
The Plaintiff by her attorney

*/s/ Harry L. Miles*
Harry L. Miles, of
*Green, Miles, Lipton & Fitz-Gibbon*
77 Pleasant Street, P.O. Box 210
Northampton, MA 01061-0210
Voice:    413.586.8218
Fax:      413.584.6278
BBO#:     345800

Certificate of Service.  I, Harry L. Miles, certify that I have served a copy of this pleading upon counsel for the proposed deponent by causing it to be placed in the United States Mail, first-class postage prepaid, today, January 31, 2005.

*/s/ Harry L. Miles*
Harry L. Miles

Certificate of Harry L. Miles

I, Harry L. Miles, certify under the pains and penalties of perjury that Exhibit A to this opposition is a true, accurate and complete copy of an E-mail message which I sent to Attorney Benjamin Barnes, Esq., counsel for the proposed deponent, Sean Reagan, on December 13, 2004.

I further certify that the excerpts of deposition testimony of defendants Cerreta, Morris and Haskell, attached to this opposition as Exhibits B-D, are true and accurate copies of the transcripts of their depositions which I received from Jessica M. DeSantis, Court Reporter.

Signed under the pains and penalties of perjury January 31, 2005, at Northampton.

/s/ *Harry L. Miles*
Harry L. Miles

7

Dear Ben:

I intend to subpoena Mr. Reagan to testify in the matter of Karen Karowski v. Cerreta, et alii, now pending in the United States District Court for the District of Massachusetts, Western Division, Ponsor, J.

I understand that he has the concerns normal to a journalist, and I trust this letter will serve to allay some of them.

First, Mr. Reagan wrote a number of articles about the Selectmen's attempts to terminate Ms. Karowski as a public employee because of her "relentless criticism" of their policies.

Second, Mr. Reagan quoted some of their comments directly and wrote the substance of others.

Third, certain of the Selectmen do not remember having made some of the comments which Mr. Reagan attributes to them.

Fourth, to protect Mr. Reagan's journalistic integrity, I do not intend to ask him for his notes of the meetings, or about anything that occurred at the meetings but about which he did not write. I also do not intend to ask him about any information he acquired from his sources and which he did not put in the paper; I do not intend to ask him to identify those sources.

Fifth, I do intend to ask him if he heard the statements which he put in the paper, and if the statements are attributed correctly. I will ask him about the context in which the statements were made: that is, who was there to his knowledge; and, what did they say, if anything, in response to the statement about which he wrote. In other words, I intend to treat him as a percipient witness to events which occurred in a public forum about which he wrote published newspaper articles.

Naturally, I cannot bind opposing counsel to the same strictures that I intend to observe. Opposing counsel is Nancy Frankel Pelletier at Robinson Donovan in Springfield. Her number is: 413.732.2301.

I am willing to consent to a protective order for Mr. Reagan's deposition which adheres to the conditions set forth above. Please let me know how you would like to proceed.

Thank you for your help.

Sincerely yours,

/s/
Harry L. Miles

Page 1

1              COMMONWEALTH OF MASSACHUSETTS

2              Department of the Trial Court

3    Western Division      C.A NO.:  03-CV-30314-MAP

4

5

6    * * * * * * * * * * * * * * * *

7    KAREN KAROWSKI,                    *

8              Plaintiff                *

9    v.                                 *

10   ERIC CERRETA, DAVID HASKELL,       *

11   CHRISTOPHER MORRIS, AND THE        *

12   INHABITANTS OF THE TOWN OF         *

13   WILLIAMSBURG,                      *

14            Defendants                *

15   * * * * * * * * * * * * * * * *

16

17           DEPOSITION OF:  ERIC CERRETA

18           Green, Miles & Fitz-Gibbon

19                77 Pleasant Street

20           Northampton, Massachusetts

21                November 18, 2004

22

23             Jessica M. DeSantis

24                Court Reporter

**ERIC CERRETA**
**November 18, 2004**

Page 79

1              MS. PELLETIER:  We're excluding

2          things contained in the evaluations,

3          correct?

4              MR. MILES:  I'm sorry?

5              MS. PELLETIER:  We're excluding

6          things contained in the evaluation?

7              MR. MILES:  Yes.

8              THE WITNESS:  Nothing other than

9          what I noted.  I don't recall anything else

10         at this time.

11         **Q.      (By Mr. Miles)  Okay.  Did you talk**

12    **to a newspaper reporter by the name of Sean**

13    **Reagan about Ms. Karowski's non reappointment?**

14         A.     I imagine I did at the time.

15         **Q.      Okay.  Did you make the statement,**

16    **quote, I think she's been very hostile to us,**

17    **unquote?**

18         A.     I'd have to see it.

19         **Q.      Do you remember making that**

20    **statement?**

21         A.     I don't remember making it.

22         **Q.      Did you make the statement, quote, I**

23    **don't demand total loyalty, but this is**

24    **relentless and routine, unquote?**

**ERIC CERRETA**
**November 18, 2004**

Page 80

1      A.    I don't remember.  I assume it's in

2  print.

3      Q.    Did you talk to the reporter or

4  state at a board meeting on Thursday around July

5  15th, '03, that it was Ms. Karowski's criticism

6  of the selectmens lack of support for the Quinn

7  bill as well as the handling of town financial

8  matters.  That was the criticism you referred to?

9            MS. PELLETIER:  Objection.  Go

10        ahead.

11            THE WITNESS:  I don't know what he

12        printed.

13      Q.    (By Mr. Miles)  Okay.  You have a

14  copy of this in your packet.

15            Let me show you this document.

16      A.    I got it right here.

17      Q.    Yes.  I need you to look at this

18  particular one and compare them and make sure

19  they're the same document.

20      A.    Okay.

21      Q.    Can I have that back, please.

22            Did you read this article at/or

23  about the time it was printed?

24      A.    Yes.

**ERIC CERRETA**
**November 18, 2004**

Page 81

1           MR. MILES:  Can we mark this as

2       Exhibit 2, please.

3

4           (Exhibit 2, document, marked)

5

6       Q.    (By Mr. Miles)  Did looking at what

7   is now marked as Exhibit 2 refresh your memory

8   about what you said at the meeting?

9       A.    Only the part that he printed.

10      Q.    Okay.  Did you say, quote, I think

11  she's been very hostile to us, unquote?

12      A.    I may have.

13      Q.    You still don't recall that?

14      A.    I had fairly long conversations with

15  reporters and they pick and choose what they take

16  out of it.  So it's not always -- they can put

17  quotes around it, but I don't know that I

18  definitely said it that way.  I think they tend

19  to paraphrase.

20      Q.    Do you recall saying, quote, I don't

21  demand total loyalty, but this is relentless and

22  routine, unquote?

23      A.    I may have said that.

24      Q.    Do you recall it?

ERIC CERRETA
November 18, 2004

Page 82

1      A.      Not exactly.  It was a long time

2  ago.

3      Q.      Okay.  Did you site at Thursday's

4  board meeting Karowski's criticism of the

5  selectmens lack of support for the Quinn bill?

6          MS. PELLETIER:  Objection.  Go

7      ahead.

8          THE WITNESS:  I may have.  I don't

9      recall exactly what I said.

10      Q.      (By Mr. Miles)  Did you site at

11  Thursday's board meeting Karowski's criticism of

12  the select board's handling of town financial

13  matters during recent Financial Committee

14  meetings?

15          MS. PELLETIER:  Objection.  Go

16      ahead.

17          THE WITNESS:  As I said before, I

18      don't recall the exact conversation.

19      Q.      (By Mr. Miles)  Do you recall

20  whether you did that?  That's not in quotes.

21      A.      I don't remember.

22      Q.      Okay.  At the time that you voted to

23  approve the letter of July 10th were you aware

24  that Ms. Karowski was town treasurer?

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Providence, RI   Manchester, NH

**ERIC CERRETA**
**November 18, 2004**

Page 83

1   A.  I was aware of that.

2   Q.  **And you were also aware that she was**

3 **an elected member of the Finance Committee?**

4   A.  Yes.

5   Q.  **Okay.  Is it accurate to say that**

6 **Ms. Karowski never received any oral or written**

7 **warnings regarding her criticism of the selectmen**

8 **from the board?**

9   A.  No, we told the chief.

10   Q.  **And did you do that before July**

11 **10th?**

12   A.  As I've indicated before to the time

13 that I did.

14   Q.  **And was that regarding her criticism**

15 **of the selectmen?**

16   A.  It was a general comment that I

17 thought it was his job to represent the police

18 department and not hers.

19   Q.  **Okay.  And what I'm asking you is.**

20       **Did you specifically refer to her**

21 **criticism of the Board of Selectmen when you had**

22 **that conversation with the chief?**

23   A.  Oh, I don't remember exactly.

24   Q.  **Okay.  Do you recall Mr. Morris**

**CHRISTOPHER MORRIS**
**November 19, 2004**

Page 1

1           COMMONWEALTH OF MASSACHUSETTS

2           Department of the Trial Court

3

4    Western Division    C.A NO.:   03-CV-30314-MAP

5

6    * * * * * * * * * * * * * * * *

7    KAREN KAROWSKI,                    *

8              Plaintiff              *

9    v.                               *

10   ERIC CERRETA, DAVID HASKELL,      *

11   CHRISTOPHER MORRIS, AND THE       *

12   INHABITANTS OF THE TOWN OF        *

13   WILLIAMSBURG,                     *

14           Defendants               *

15   * * * * * * * * * * * * * * * *

16

17        DEPOSITION OF:  CHRISTOPHER MORRIS

18           Green, Miles & Fitz-Gibbon

19               77 Pleasant Street

20           Northampton, Massachusetts

21               November 19, 2004

22

23           Jessica M. DeSantis

24              Court Reporter

CHRISTOPHER MORRIS
November 19, 2004

Page 49

1       Q.       Do you want to talk to counsel?

2       A.       No, I'm sorry.  I apologize, but you

3  asked me a question earlier about my conversation

4  with chief Archbald and --

5              MS. PELLETIER:  The ones that I said

6       you didn't complete.  That question?

7              THE WITNESS:  Yes.  I'm sorry.  I'll

8       focus on this for now.

9              Yes, I have read it.

10      Q.       (By Mr. Miles)  Can I have it back,

11  please?

12      A.       (Witness complies.)

13      Q.       Now, before I get into this article

14  do you want to add something to your previous

15  testimony?

16      A.       I lost my train of thought.  I

17  apologize.

18      Q.       Did you speak with Shawn Reagan of

19  the Daily Hampshire Gazette after July 10th,

20  2003?

21      A.       I don't recall.

22      Q.       Do you recall saying to anyone,

23  quote, it's one thing to appoint someone that you

24  have disagreements with from time to time, but

**CHRISTOPHER MORRIS**
**November 19, 2004**

Page 50

1    that's not what we're talking about here,

2    unquote?

3         A.    I don't recall making the statement,

4    no.

5         Q.    Do you recall making the statement

6    quote, this is relentless criticism.  We need

7    someone in this position that we can work with

8    constructively, unquote?

9         A.    I can't recall making that

10   statement.

11        Q.    Do you recall telling a newspaper

12   reporter that there was a possible conflict of

13   interest because of Karowski's roles as police

14   secretary, town treasurer, and finance committee

15   member?

16        A.    No, I don't recall it.

17        Q.    Do you recall saying, quote, I have

18   concerns about how vocal she's been when we're

19   acting as police commissioners, unquote?

20        A.    No, I don't recall saying it.

21        Q.    Do you recall saying, I think other

22   business is fair game, but there's been constant

23   criticisms of decisions we've made at the police

24   department, unquote?

CHRISTOPHER MORRIS
November 19, 2004

Page 51

1      A.      I don't recall making the statement,

2    no.

3      Q.      Did you know whether or not Ms.

4    Karowski recused herself from votes involving

5    police budget or police-related issues as a

6    member of the finance committee?

7      A.      Sorry.  Was the question did you

8    know or do you know?

9      Q.      No.  Did you know.

10     A.      At the time my belief was there were

11   occasions -- I think there were some occasions

12   she did and others in which she did not.

13     Q.      What information did you have about

14   specific occasions when she did not recuse

15   herself?

16     A.      My recollection is because I was

17   either present at the meeting or I read the

18   minutes.

19     Q.      Do you have any specific

20   recollection of a particular meeting of which

21   that occurred?

22     A.      No.

23     Q.      Do you have a specific recollection

24   of a particular issue over which that occurred?



**DAVID HASKELL**
**November 22, 2004**

Page 1

```
 1            COMMONWEALTH OF MASSACHUSETTS

 2            Department of the Trial Court

 3   Western Division    C.A NO.:  03-CV-30314-MAP

 4

 5

 6   * * * * * * * * * * * * * * * *

 7   KAREN KAROWSKI,                    *

 8            Plaintiff                 *

 9   v.                                 *

10   ERIC CERRETA, DAVID HASKELL,       *

11   CHRISTOPHER MORRIS, AND THE        *

12   INHABITANTS OF THE TOWN OF         *

13   WILLIAMSBURG,                      *

14            Defendants                *

15   * * * * * * * * * * * * * * * *

16

17          DEPOSITION OF:  DAVID HASKELL

18          Green, Miles & Fitz-Gibbon

19              77 Pleasant Street

20          Northampton, Massachusetts

21              November 22, 2004

22

23          Jessica M. DeSantis

24            Court Reporter
```

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Providence, RI   Manchester, NH

**DAVID HASKELL**
**November 22, 2004**

Page 94

1    A.    Item 12?

2    Q.    **Yup.**

3    A.    Yup.

4    Q.    **Okay.  Does that refresh your memory**

5    **as to whether or not the appointment of Osa Flory**

6    **and Carol Paul were tabled?**

7    A.    They were -- the minutes were read

8    and accepted so they were tabled.

9    Q.    **Okay.  Did you say in public meeting**

10   **that the tone of a letter to the editor that**

11   **appeared in a newspaper was inappropriate for**

12   **someone who wants to represent the selectmen on a**

13   **committee?**

14   A.    Is that in the minutes of our

15   meeting?

16   Q.    **I'm asking if you have a memory of**

17   **that?**

18         MS. PELLETIER:  Do you remember?

19   Not whether it's written down.

20         THE WITNESS:  No.

21   Q.    **(By Mr. Miles)  Okay.  All right.**

22   **Let me show you a document, which is not marked,**

23   **and it appears or purports to be an article from**

24   **the Daily Hampshire Gazette from December 8th,**

DAVID HASKELL
November 22, 2004

Page 95

1   2003, and ask you to look that over.

2                   Tell me when you've finished reading

3   it.

4                   Okay.

5                   MR. MILES:   Mark this as Exhibit 1

6          in the Haskell deposition.

7

8                   (Exhibit 1, document, marked)

9

10             Q.      (By Mr. Miles)   Did Exhibit 1

11  refresh your memory as to what you said at a

12  public meeting regarding the appointments of Osa

13  Flory and Carol Paul?

14             A.      I read it.

15             Q.      Did it refresh your memory?

16             A.      To some degree.

17             Q.      Okay.   Do you have any memory now of

18  asking to table their appointments so you could

19  do some research about which of them had written

20  a critical letter or a letter critical of the

21  Board of Selectmen?

22             A.      If that's what it says.

23             Q.      Do you have a memory of saying

24  that?

DAVID HASKELL
November 22, 2004

Page 96

1        A.      As I stated, if it isn't in our

2    minutes what is said is someone else's take upon

3    what is going on in the room.

4              MS. PELLETIER:  He's asking you if

5         you remember, sitting here today, do you

6         remember saying that?

7              THE WITNESS:  I remember some of

8         it.

9        Q.      (By Mr. Miles)  What do you

10   remember?

11       A.      As I said, some that requested

12   tabling or I don't know if you call it tabling or

13   what.  We make -- as I said, if we -- if it's a

14   long night and we have somewhat of a disagreement

15   or more questions on an appointment they are just

16   put off.  They are not -- the town runs without

17   full boards all the time.

18       Q.      Did you make the statement -- do you

19   have any recollection now of making a statement,

20   in substance, that the tone of the letter to the

21   editor that appeared in the newspapers was

22   inappropriate for someone who wants to represent

23   the selectmen on a committee?

24       A.      If that's what I said.

DAVID HASKELL
November 22, 2004

Page 97

1          MS. PELLETIER:  Objection.

2     Q.     (By Mr. Miles) Okay.  But I'm asking

3  if you have a memory of saying that?

4     A.     No, sir.

5     Q.     Do you recall a meeting after this

6  one at which you said that you had looked but

7  couldn't find any critical letters or e-mails

8  from Paul or Flory so you agreed to support both

9  appointments?

10     A.     Is that what it says?

11     Q.     I'm asking if you have a memory?

12     A.     Yes.

13     Q.     You need to understand, sir, I need

14  to find out what's in your memory first.

15     A.     Yes.

16     Q.     So the answer is yes?

17     A.     We made the appointment, yes.

18          MS. PELLETIER:  That's not the

19     question.  The question is -- wasn't did

20     you make the appointment.  The question

21     was.  Do you recall making that statement

22     and, therefore, making your appointment.

23          THE WITNESS:  I don't recall the

24     full context of the statement.

**CATUOGNO COURT REPORTING SERVICES**
Springfield, MA   Worcester, MA   Boston, MA   Providence, RI   Manchester, NH

DAVID HASKELL
November 22, 2004

Page 98

1      Q.      (By Mr. Miles)  Do you recall

2  saying, in substance, that on/or about -- I'm

3  sorry.

4          Do you recall saying, in substance,

5  that on/or about December 11th that you had been

6  unable to find any such letters or e-mails from

7  either Paul or Flory and, therefore, you agreed

8  to support both appointments?

9          MS. PELLETIER:  Objection.  Go

10      ahead.

11          THE WITNESS:  I just stated I don't

12      recall the exact date, letter or

13      statement.

14      Q.      (By Mr. Miles)  Do you recall making

15  that kind of statement, in substance --

16          MS. PELLETIER:  Objection.  Go

17      ahead.

18      Q.      (By Mr. Miles)  -- at any meeting?

19      A.      In substance to what degree?

20      Q.      Well, did you say something, like,

21  that you had looked but couldn't find any

22  critical letters or e-mails from Paul or Flory?

23          MS. PELLETIER:  Objection.  Go

24      ahead.