UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:03-CV-30314-MAP

KAREN KAROWSKI, )
    Plaintiff )
 )
vs. )
 )
ERIC CERRETA, DAVID HASKELL, )
CHRISTOPHER MORRIS, and )
THE INHABITANTS OF THE TOWN OF )
WILLIAMSBURG, )
    Defendants )

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The plaintiff, Karen Karowski (hereinafter the "plaintiff"), alleges that each of the defendants, Eric Cerreta ("Cerreta"), David Haskell ("Haskell") and Christopher Morris ("Morris") (collectively referred to as the "defendants")[1], who at all times relevant to this matter were elected officials and comprised the Town of Williamsburg's (the "Town") Select Board, acted under color of state law to retaliate against her in violation of her First Amendment Rights and used their power of appointment to threaten, intimidate or coerce the plaintiff in violation of M.G.L. c. 12, §§ 11H and 11I. The defendants move for summary judgment with respect to both counts and, for the reasons articulated in this Memorandum of Law in Support of their Motion for Summary Judgment, submit that there is no genuine issue of material fact and that each defendant is entitled to judgment as a matter of law.

---

[1] The plaintiff also names the Inhabitants of the Town of Williamsburg, however, no colorable claim appears to be articulated in the Complaint against anyone/entity other than the individual defendants.

424946

## FACTS

The defendants incorporate by reference herein the facts as articulated in their Rule 56.1 Statement of Material Facts.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant … would permit a rational fact finder to resolve the issue in favor of either party." See *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir. 1996). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *Id.* at 324. In evaluating motions for summary judgment, however, a court will not consider "conclusory allegations, improbable inferences and unsupported speculation." See *Galloza v. Foy,* 389 F.3d 26, 28 (1st Cir. 2004).

Using this standard of review, the Town submits that there are no material facts in dispute, the plaintiff's evidence, as a matter of law, fails to support her claims and this Court should, therefore, allow the Town's Motion for Summary Judgment and enter judgment in its favor on all Counts.

424946

## LEGAL ARGUMENT

A. <u>The Defendants Are Entitled To Summary Judgment On The Plaintiff's First Amendment Claim.</u>

    1. <u>Under The Relevant Case Law, The Plaintiff's Speech Does Not Qualify As Protected Speech.</u>

In the instant action, the plaintiff alleges "as a citizen and registered voter [she] has voiced her opinion about the positions the Selectmen have taken concerning [the Town's] police department, including opposing the Selectmen's position toward compensation of [the Town's] only full time police officer, and the Selectmen's position on the Quinn bill." (See Exhibit 1 at ¶ 19). The plaintiff further alleges that "during her tenure as an elected official, [she] has voiced public criticism of various positions the Selectmen have taken and of their financial management of [the Town]." No specific statements are alleged in the complaint. (See Exhibit 1 at ¶ 21). It is this generalized speech which the plaintiff claims should have been protected and that her First Amendment rights were violated when the defendants failed to reappoint her as police secretary. For the reasons which follow, this Court should reject the plaintiff's claim that her speech is protected.

The initial inquiry into whether a public employee's speech is protected by the First Amendment is one of law, not fact. See *Connick v. Myers,* 461 U.S. 138, 148 n.7 (1983). In order to determine whether speech has protected status, the test this Court must employ is in three parts. First, did the plaintiff make her statements "as a citizen" in expressing herself on matters of "public concern" or simply as an employee upon matters of only personal interest. Next, the strength of the plaintiff's interest, as a citizen expressing herself on matters of public concern must be balanced against the Town's interest as an employer in delivering efficient services. Finally, if the plaintiff's and the public's free speech interests outweigh the Town's interest in curbing speech, the plaintiff must show that the protected speech was a substantial or

424946

motivating factor in an adverse employment action. See *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir. 2004) (noting that these three steps derive, in order, from *Connick v. Myers,* 461 U.S. 138 (1983); *Pickering v. Board of Educ.,* 391 U.S. 563 (1968); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977)).

Step 1 of this three part process, whether the plaintiff's speech implicates matters of public concern, is a question of law in which the court must inquire as to the context, form and content of the speech. See *Connick v. Myers,* 461 U.S. at 147-148. See also, *Rankin v. McPhearson,* 483 U.S. 378, 388 (1987). For Step 2, the balancing step, the court can look to time, manner and place of an employee's statements. *Id.* (citations omitted). It is permissible for a Court to consider whether the statement "has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary … or interferes with regular operation of the enterprise." *Id., citing Pickering v. Board of Education,* 391 U.S. 563, 570-573 (1968). While it is true that public employees retain their First Amendment rights, they "do not retain the right to say everything they want without consideration of the needs" … of the decisions of their employer. See *DeLuca v. Sullivan,* 450 F. Supp. 736, 740 (D. Mass. 1977), *disapproved of on other grounds, Burns v. Sullivan,* 619 F.2d 99, 101 (1st Cir. 1980). The undisputed evidence supports that the decision not to reappoint the plaintiff was merely an employment decision made by the defendants based upon reasons entirely within their rights as an employer to consider.

The general topics of the plaintiff's speech articulated in the complaint are arguably matters of "public concern". However, as Step 2 provides, it is critical to the protected speech analysis to look to the time, manner and place of such speech. The plaintiff herself acknowledges that she engaged in regular, public criticism of the defendants without ever

424946

identifying the capacity in which she offered her opinions (i.e. private citizen/elected official/town employee). (See Exhibit 1 at ¶¶ 19, 21; and Exhibit 3 at pp. 102-103). Without stating first that she spoke as a private citizen, particularly on police matters, her criticism was viewed by many as spoken with the authority of her position and as creating confusion and tension between the Department and the Select Board and raised the question of conflict of interests. (See Exhibit 6 at pp. 23-24, 27, 35-37, 46-47; Exhibit 7 at pp. 21-23; Exhibit 8 at pp. 54-55, 111-112; and Exhibit 10 at pp. 21-25, 27, 34-35, 41-44, 50). Further, the record is replete with undisputed evidence that the Chief was informed on multiple occasions regarding the plaintiff's perceived inappropriate comments. (See Exhibit 5 at pp. 26-27, 36-45). There is undisputed evidence that a former elected member of the Finance Committee, Michael Beattie, had complained to both Morris and Cerreta during 2002-2003 about the plaintiff's conduct. (See Exhibit 10 at p. 21). Beattie told Cerreta that the plaintiff spoke about the Select Board after several Finance Committee meetings in a non-professional and unflattering manner and that he could not tell in what capacity the plaintiff's comments were made. (See Exhibit 10 at pp. 21-25, 27). Beattie talked to Morris at least three times during this period of time and characterized the criticism of the plaintiff with respect to the Select Board as a "constant tirade" and that if the Select Board didn't behave in the way that the plaintiff wanted them to, she complained about it. (See Exhibit 10 at pp. 41-42). The evidence is also undisputed that the Chief, despite being told about these issues by the defendants prior to their decision on not to reappoint and despite acknowledging that he believed he was expected to take an action, took no corrective measures. (See Exhibit 5 at pp. 35-37).

The balance in step 2 requires looking at the legitimate needs of the Town to run an efficient government with the right of the plaintiff to speak out as a "private citizen." Yet, as the

424946

undisputed evidence supports, the plaintiff never made it clear that she spoke from the position of a private citizen. Rather, the evidence provides a clear picture of an employee who failed to differentiate her strong and often negative opinions about the defendants as an elected and/or private citizen, from her capacity as an appointed Town employee. This Court should decline to find the plaintiff's speech is protected over and above the needs of the defendants to have an employee who supported their work and who did not constantly criticize their decisions. To find otherwise, essentially transforms the position from a yearly appointment to a job with an indefinite term even in the face of constant criticism of the employer.

> 2. **Even if The Plaintiff's Speech Passes Muster for Steps 1 and 2, The Plaintiff Will Not Be Able To Prove That Her Protected Speech Was The Substantial Or Motivating Factor In the Decision Not To Reappoint Her.**

Assuming *arguendo*, that the plaintiff's evidence is sufficient to pass muster under steps 1 and 2, she must also still prove that this speech was the substantial or motivating factor in the Select Board's failing to reappoint her. This she cannot do as the ample undisputed evidence in the record indicates that the plaintiff had engaged in any number of activities which the defendants considered in deciding not to reappoint her. (See Exhibits A, B, and C).

It is undisputed that the defendants were aware of the following when making their employment decision: 1) that the plaintiff was overheard by other Town (non-police) employees discussing with non-police personnel confidential information to which she was privy only because she was the police secretary. (See Exhibit 4 at pp. 10-11, 13-15, 20-21; Exhibit 5 at pp. 43-45; and Exhibit 6 at pp. 52, 56-57); 2) that the plaintiff spent large amounts of time while working as the police secretary doing other Town business as well as non-official business, (See Exhibit 4 at pp. 17-19; Exhibit 5 at pp. 29, 32, 34-35, 38-39, 42, 85, 101; Exhibit 6 at pp. 23, 33, 34, 88-89, 96; and Exhibit 8 at pp. 73-74, 83); 3) that the plaintiff was also known by police

424946

officers in Williamsburg as being someone you did not want to talk in front of about confidential matters as they would likely to be leaked. (See Exhibit 8 at pp. 76-77).

The defendants expect the plaintiff will argue that these reasons were not provided in the July 10th letter as grounds for her non-reappointment. Nevertheless, it is undisputed that when making their decision not to reappoint her, the defendants were well aware of all of this behavior and considered all of it in making their employment decision. It is also undisputed that the most troubling aspect of the plaintiff's conduct was her indiscretion in confidential police business, and the defendants were concerned about publishing moot information in the July 10th letter. (See Exhibits A, B and C).

### 3. The Defendants Are Entitled to Qualified Immunity.

Even if this Court were to find sufficient facts that the plaintiff has made out a First Amendment violation, the defendants are entitled to qualified immunity.

It is axiomatic that qualified immunity protects government officials who engage in unconstitutional conduct so long as that "conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." See *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). This shield protects "all but the plainly incompetent or those who knowingly violate the law." See *Malley v. Briggs,* 457 U.S. 335, 341 (1986). See also, *Wagner v. City of Holyoke,* 404 F.3d 504, 508-509 (1st Cir. 2005); *Dirrane v. Brookline Police Dept.,* 315 F.3d 65, 71 (1st Cir. 2002).

The right of the plaintiff to engage in speech of public concern without retaliation was admittedly clearly established prior to the actions alleged herein and the defendants advance no argument to the contrary. However, "qualified immunity requires that the general right be placed in a reasonably specific context." See *Wagner v. City of Holyoke,* 404 F.3d at 509. As in

424946

*Wagner*, the undisputed facts that led the defendants to believe that reappointment was not required do not demonstrate that they "must have known they were acting unconstitutionally." See *Wagner, supra,* 404 F.3d at 509, *citing, Dirrane v. Brookline Police Dept.,* 315 F.3d at 71. Without repeating the myriad undisputed facts in this case, the plaintiff's behavior, which was complained about by various town citizens and officials, coupled with the defendants' own observations of the public disdain with which the plaintiff held many of their decisions, would have permitted a reasonable employer to believe it was entitled to look for a new police secretary. Even if the defendants were wrong in this regard, it was not "egregiously so and accordingly qualified immunity is available." See *Ringuette v. City of Fall River,* 146 F.3d 1, 5 (1st Cir. 1998).

C.     **The Plaintiff Cannot Establish Property Or Liberty Interest And Her Due Process Claim, Therefore, Must Fail.**

The plaintiff alleges that the defendants deprived her of her right to due process guaranteed by the Fourteenth Amendment to the United States Constitution. (See Exhibit 1 at ¶ 48). To support such a claim, the plaintiff must provide evidence that she possessed a constitutionally protected interest in life, liberty or property and that the defendants, acting under the color of state law, deprived her of that interest. See U.S. Const. Amend. XIV, § 1. See also, *Metivier v. Town of Grafton,* 148 F. Supp. 2d 98, 106 (D. Mass. 2001). The two-step process that is in place for determining whether or not procedural due process has been violated is: (1) is there a liberty or property interest which has been interfered with by the state; (2) were the procedures available constitutionally sufficient. *Id.* at 106 (citations omitted).

In the instant action, all of the undisputed evidence supports the fact that the position of police secretary was a yearly appointed position by the Board of Selectmen. (See Exhibit 1 at ¶ 24; and Exhibit 3 at pp. 108-116). Further, the undisputed evidence is clear that the plaintiff had

424946

served a full one year term between July, 2002 and July, 2003 when she received her letter of non-reappointment. (See Exhibit 8 at pp. 34-35). There is no suggestion by the plaintiff that she was entitled to a hearing or that any provision of state law or town charter required a hearing prior to the defendants' decision not to reappoint her. Under well settled law, the plaintiff is not entitled to a hearing where no independent source such as state law rules, etc. require such. See *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). Therefore, while the plaintiff may have had a personal economic interest in being reappointed, she did not have a constitutionally protected property interest to this position and, therefore, her procedural due process claim must fail.

To the extent the plaintiff also alleges that she had a liberty interest which was violated, this claim must also fail. (See Exhibit 1 at ¶ 50). "To establish a liberty interest sufficient to implicate Fourteenth Amendment safeguards, the individual must not only be stigmatized, but also stigmatized in connection with the denial of a right or status previously recognized under state law." See *Metivier v. Town of Grafton,* 148 F. Supp. 2d at 107 (citations omitted). Not only is the plaintiff unable to demonstrate that any action of the defendants so damaged her in her standing in the community, she is also unable to show that any action by the defendants impaired her ability to find other employment in her chosen field. In fact, the opposite is true. It is undisputed that the plaintiff remained in the police secretary position for years after the original letter of non-reappointment was sent and left that position at her own choosing at her own time as a result of yet another disagreement with a decision by the Select Board. (See Exhibits A, B and C). The plaintiff simply cannot support, on the basis of the evidence in this matter, a violation of her liberty interest *vis a vis* the Fourteenth Amendment.

424946

Even if this Court were to rule that the plaintiff has sufficient evidence to support a Due Process violation, the defendants submit that the Qualified Immunity argument discussed *supra*, at 7-8 has equal force with respect to these claims.

**D.    There Is Insufficient Evidence To Support A Claim Under § 1985.**

Finally, the plaintiff also alleges that the defendants' acted in a conspiracy with one another to deprive her of her civil rights guaranteed by the First Amendment. (See Exhibit 1 at ¶ 47). To the extent plaintiff is alleging a violation of § 1985, there is not a single specific allegation in the complaint nor is there any evidence in the summary judgment record that the defendants acted in a conspiracy to retaliate against the plaintiff. A cause of action under § 1985(3) has four elements: (1) two or more persons must conspire (2) to deprive, either directly or indirectly, any person or class of persons of equal privileges and immunities under the laws, (3) one or more of the conspirators must have done or caused to be done an act in furtherance of the object of the conspiracy, and (4) the plaintiff must have suffered either an injury to person or property or a deprivation of a constitutionally protected right or privilege as a result of the conspiracy. See *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 268-269 (1993), *quoting, Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971); *Andrade v. Jamestown Housing Auth.,* 82 F.3d 1179, 1192 (1st Cir. 1996). The United States Supreme Court has construed the second element of the aforementioned elements to require that "there must be some racial or perhaps otherwise class based, invidiously discriminatory animus behind the conspirators' action." See *Griffin v. Breckenridge,* 403 U.S. at 102.[2]

All of the undisputed evidence supports that each individual defendant acting independent of the other had information that the plaintiff was not performing her responsibility

---

[2] If this Court has ruled that no violation of the First Amendment has occurred, then the § 1985 claim fails as a matter of law. See *Nieves v. McSweeny,* 241 F.3d 46, 53 (1st Cir. 1996) (holding that there must be an actual abridgement of some federally secured right to make out a claim under § 1985).

424946

as police secretary satisfactorily and shared that information with the Chief. The plaintiff offers no evidence of any conspiratorial meetings, written memoranda, or other unlawful act that the defendants engaged in in making their decision not to reappoint her. There is absolutely no evidence that there was any racial or otherwise class based, invidiously discriminatory animus on the part of the defendants and, for these reasons, the plaintiff will be unable to support this claim at trial and the defendants move that the Court order judgment in their favor.

Even if this Court were to rule that the plaintiff has sufficient evidence to support a Section 1985 claim, the defendants submit that the Qualified Immunity argument discussed *supra,* at 7-8 has equal force with respect to this claim.

### E. The Defendants Are Entitled To Summary Judgment On The Plaintiff's Massachusetts Civil Rights Claim.

The plaintiff alleges that the conduct of the defendants in failing to reappoint her was a violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11I and 11H (hereinafter the "Act").

To establish a claim under the Act, the plaintiff must prove (1) that she engaged in the exercise of a right secured under the United States Constitution or laws of either the United States or the Commonwealth, (2) that that right had been interfered with or attempted to be interfered with and (3) that the interference or attempted interference was by "threats, intimidation or coercion." See *Buster v. Moore, Inc.,* 438 Mass. 635, 644 (2003) (citations omitted). Under the Act, a "threat" means the "intentional exertion of pressure to make another fearful or apprehensive of injury or harm." See *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 474-475, *cert. denied,* 513 U.S. 868 (1994) (using a reasonable person's standard to determine if conduct constitutes threats, intimidation or coercion). "Intimidation" means "putting a person in fear for the purpose of compelling or deterring his or her conduct."

424946

*Id.* "Coercion" means "application of physical or moral force to another to constrain him to do against his will something he would not otherwise do." *Id.*

As an initial matter, if this Court found that there was no constitutional violation under the plaintiff's § 1983 claim, then this claim fails as a matter of law as Step 1, the plaintiff was exercising her rights under the Federal Constitution, has not been met. Furthermore, if this Court ruled that the defendants' did violate the First Amendment but are nevertheless entitled to qualified immunity, then the claim under the Act must likewise fail as the defendants could not act reasonably under the circumstances known to them and have acted with threats, intimidation or coercion. *Id.* at 474-475.

However, if this Court found sufficient evidence to support a violation of the First Amendment and no qualified immunity protection, then "the crux of the case focuses on the third element -- whether the defendants' conduct constitutes threats, intimidation or coercion under the [Act]." See *Buster v. Moore, Inc.,* 438 Mass. at 408-409. Decisions interpreting the Act "normally require" a showing of an actual or potential physical confrontation accompanied by a threat of harm. See *Fletcher v. Szostkiewicz,* 190 F. Supp. 2d 217, 230 (D. Mass. 2002) (citations omitted). In the instant action, there are no allegations nor is there evidence of physical confrontation, accompanied by any threat of harm. To the contrary, despite the continuous conversations the defendants had with the Chief, the plaintiff was never told that the defendants were unhappy with her conduct and there is simply no evidence to suggest that she was threatened, intimidated or coerced in any way for the purpose of compelling or deterring her conduct or for the purpose of constraining her to do something she would not have otherwise done. The undisputed facts in the instant case simply do not reveal that any conduct on the part

424946

of the defendants rose to the level of threats, intimidation or coercion as interpreted by the existing case law. See *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. at 467.

## CONCLUSION

For all of the reasons articulated herein, the Town submits that there are no material facts in dispute and that each of the individual defendants is entitled to judgment in their favor as a matter of law.

THE DEFENDANT
THE TOWN OF WILLIAMSBURG

By     */s/ Nancy Frankel Pelletier*
Nancy Frankel Pelletier, Esq.,
Doroth Varon, Esq., both of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301 Fax (413) 785-4658
BBO No.: 544402
BBO No.: 629609

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 1st day of May, 2006.

*/s/ Nancy Frankel Pelletier*
Nancy Frankel Pelletier, Esq.

424946