THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

Western Division
Civil Action No.:  03-cv-30314-MAP

----------------------------------

KAREN KAROWSKI, Plaintiff,

v.

ERIC CERRETA, DAVID HASKELL, CHRISTOPHER MORRIS, and THE
INHABITANTS OF THE TOWN OF WILLIAMSBURG, Defendants.

============================================================

PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS IN OPPOSITION
TO DEFENDANTS' FEDERAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS
PURSUANT TO LOCAL RULE, 56.1

============================================================

INTRODUCTION.

This matter comes before the Court on Defendants' Motion
for Summary Judgment and Plaintiff's Opposition to the
Defendants' Motion for Summary Judgment. The plaintiff relies
upon the facts stated in her Verified Amended Complaint and
those stated below to oppose the defendants' motion for summary
judgment.

SUMMARY OF MATERIAL FACTS IN DISPUTE.

The plaintiff claims that the defendants, the Town of
Williamsburg and the individuals who formed its Select Board,
refused to reappoint her to the position of police secretary
because she had "relentlessly criticized" various decisions they

1

had made. See Exhibit A, Verified Complaint, Exh. A, Letter of July 10, 2003, from the defendants to the plaintiff. The police secretary is an employee of the Town who has no role in making policy.

The plaintiff further claims that the defendants refused to reappoint her because she criticized the Select Board's decisions in public as an elected member of the Finance Committee of the Town or as the elected Town Treasurer.

The plaintiff also claims that her public statements as an elected public official were constitutionally protected speech and that the defendants retaliated against her because of it.

The defendants deny that the plaintiff's speech was constitutionally protected.

The defendants claim that they refused to reappoint the plaintiff as police secretary because she performed poorly: she breached confidentiality, officers complained about her performance, and she conducted nonpolice business while she was working as the police secretary.

The plaintiff responds that she performed well (see Exhibit A, Verified Amended Complaint, ¶¶11, 42, and Exhibit B, Evaluations by Chief Patrick Archbald), that Chief Archbald investigated the allegations that she had breached confidentiality and had exonerated her, that complaints from

officers were early in her tenure and were corrected, and that
she conducted nonpolice business as the Town Treasurer with the
knowledge and permission of the Chief and of the individual
defendants because the defendants had not provided an office for
the Town Treasurer and because Town officials either came to the
police station or sent citizens to the police station to
accomplish business with the plaintiff as she was the Town
Treasurer. See Exhibit A, Verified Amended Complaint, ¶¶40, 41.

RESPONSE TO SPECIFIC CLAIMS OF UNDISPUTED FACT.

Karen Karowski, the Plaintiff (Ms. Karowski), respectfully
states that although she does not dispute the statements of fact
contained in paragraphs one through six, ten, twenty, twenty-
two, twenty-three, twenty-six, thirty-eight, forty-four through
forty-nine, sixty-two through sixty-four, sixty-seven, seventy,
seventy-two, seventy-seven, eighty-one, eighty-two, eighty-four,
eighty-six, eighty-seven, ninety-one, and ninety-two of the
Defendants' Rule 56.1 Statement of Undisputed Facts, the
following genuine issues as to material fact exist:

7.    The Plaintiff regularly and publicly disagreed with and
      criticized the decisions of the defendants in their
      capacity as Selectboard however, (*sic*) the plaintiff
      never disclosed in what capacity she spoke when she
      engaged in this criticism.

**Response:**    The plaintiff admits that she regularly and publicly disagreed with and criticized certain decisions of the defendants in their capacity as Selectboard. The plaintiff **disputes** the remaining statements of fact contained in this paragraph. The plaintiff engaged in these discussions as a duly-elected member of the Finance Committee of the Town of Williamsburg (the FinCom). When members of the FinCom asked the plaintiff for information in some capacity other than as a member of the FinCom, she identified the interest for which she spoke: Police Secretary or Town Treasurer as the case might be. See Exhibit C, Depo., Ms. Karowski, at 104, 107.

8.    During Finance Committee meetings, and as a member of the Finance Committee, the plaintiff would provide her opinions without identifying the fact that she was voicing her opinion as a private citizen and not as a public employee.

**Response:**  The plaintiff **disputes** the statements of fact contained in this paragraph. The plaintiff understood that the other members of the FinCom knew that she spoke as a FinCom member unless she stated otherwise. See Exhibit C, Depo., Karowski, at 103, 104-105, 107. See Exhibit D, Aff. of Mahieu., ¶¶4, 5, 7, 8.

4

9.    The letter from the Selectboard informing plaintiff that
she was not reappointed made it clear that the
Selectboard was unhappy with the plaintiff's constant
criticisms of the Board with regard to their (*sic*)
decisions concerning Town business, and its belief that
it was inappropriate for the police secretary or
administrative assistant to "relentlessly complain about
the decisions the Board members make in their capacity as
police commissioners." Finally, the Board felt the need
to fill the position with someone who would not
"constantly attempt to undermine [the Board's]
authority."

**Response:** The plaintiff agrees that the Board did not
reappoint her because she engaged in political speech of
great public concern. The plaintiff **disputes** the
remaining statements of fact contained in this paragraph.
The plaintiff disputes that she attempted to undermine
the Board's authority. She publicly disagreed with the
Board's implementation of its authority. See Exhibit H,
Plaintiff's Affidavit; see, also Exhibit C, Depo.,
Karowski, at 120-121, 122-125.

10.  The plaintiff continued as police secretary after she
received the July 10th letter and, in fact, never lost a

day of paid work as police secretary as a consequence of the Select Board's decision not to reappoint her.

11. The plaintiff admitted discussing an arrest with a Town employee, Maxine Schmidt ("Schmidt") with whom she shared an office in the Town Hall.

**Response:** The plaintiff **disputes** the statements of fact contained in this paragraph. Ms. Schmidt approached the plaintiff and asked her if a particular person was still in custody. Schmidt asked the question because she was the Health Officer, and she was about to issue a cease and desist order against the person, and she did not want to serve the order if the person could not comply with it because he was in jail. Ms. Schmidt had discovered the person had been incarcerated by reading about it in the newspapers. Ms. Karowski simply told her to contact the police department to find out. There was no discussion.[1] No confidential information was exchanged. See Exhibit E, Schmidt Affidavit; Exhibit F, Depo., Chief Archbald, at 105; and Exhibit C, Depo., Karowski, at 42-43, 46-47.

12. The plaintiff could not remember if the Town Collector, Tess Barstow, or if the Town Assessor, Marge Dunphy, was

---

[1] "To discuss" is defined as: (a) to investigate by reasoning or argument; (b) to present in detail for examination or consideration; or (c) to talk about. Merriam-Webster On-line Dictionary at:
http://reference.aol.com/dictionary?dword=discuss&lookupbtn=Look+Up

present during the aforementioned conversation with
Schmidt.

**Response:**  The plaintiff agrees that she could not
remember if the Town Collector, Tess Barstow, was
present. The plaintiff **disputes** the remaining statements
of fact contained in this paragraph and she incorporates
her response to the previous paragraph as her response to
this one. The plaintiff could not see whether the Town
Assessor, Marge Dunphy, was present because of the half-
wall that separated the two offices. See Exhibit C,
Depo., Karowski, at 45.

13. Prior to the decision not to reappoint her in July, 2003,
the Chief of Police, Patrick Archbald (hereinafter the
"Chief"), discussed with plaintiff the fact that one of
the Assessors told him about a conversation she had
overheard the plaintiff to have with Schmidt concerning
confidential police business.

**Response:**  The plaintiff agrees that the Chief talked to
her about the fact that it had been reported to him that
the plaintiff had a conversation with Ms. Schmidt
concerning confidential police business. The plaintiff
**disputes** the remaining statements of fact contained in
this paragraph. One of the defendants, Christopher

Morris, not an Assessor, reported to the Chief that the
plaintiff had discussed confidential police business with
Ms. Schmidt. The Chief did not remember whether Mr.
Morris had told him the source of the information. See
Exhibit F, Depo., Chief Archbald, at 43, 45. The Chief
discussed the matter with the plaintiff and concluded
that no breach of confidentiality had taken place. *Ibid.*,
at 106.

14.  The plaintiff was aware that certain police officers
     raised issues with the Chief regarding her performance as
     police secretary and about conversations being held in
     the police station regarding Town business that was not
     police business.

     **Response:**  The plaintiff agrees that certain police
     officers reported to the Chief that the plaintiff had
     conversations in the police station about town business
     that was not police business, and that an officer had
     complained about filing not being done promptly enough.
     The plaintiff **disputes** the remaining statements of fact
     contained in this paragraph. Further, the Chief knew that
     the plaintiff discussed town business in the police
     station with town officials because she did not have an
     office at that time. The Chief permitted the plaintiff to

discuss town business in the police station but asked her
to be more aware of the presence of police officers who
might be disturbed by the conversations. See Exhibit C,
Depo., Karowski, at 77-80; Exhibit F, Depo., Chief
Archbald, at 29-30.

15.  The plaintiff allowed individuals to come to the police
station while she was being paid in her capacity as
police secretary to conduct non-police business.

**Response:**  The plaintiff agrees that town officials,
including members of the Select Board, came to the police
station to discuss town business with her. The plaintiff
**disputes** the remaining statements of fact contained in
this paragraph. The plaintiff did not "allow" people to
come to the police station to conduct non-police, Town
business; town officials sent people to the plaintiff at
the police station. Defendant Morris also came to the
police station to conduct non-police, Town business with
the plaintiff. The plaintiff compensated the town for the
time she spent with town officials on other than police
business by staying late on those days. The plaintiff
spoke with Corporal Scoble who had raised the issue with
the Chief, and resolved it. See Exhibit C, Depo., Karen
Karowski, at 77-84.

16.  The Chief told the plaintiff that two police officers
     complained to him about her failure to keep up with
     filing work.

     **Response:** Any complaints about the plaintiff's filing of
     documents occurred early in the plaintiff's tenure at the
     police department. The complaint was not that the
     plaintiff did not keep up with filing work but that she
     did not make ensuring that documents were filed in the
     morning a priority. The Chief repeatedly complimented the
     plaintiff's organization, filing and tracking of
     important documents in his evaluations of her. See
     Exhibit B, Evaluations; Exhibit F, Depo., Chief Archbald,
     at 84-85.

17.  The plaintiff never talked to the Chief about voicing her
     personal opinions as opposed to the opinions perceived to
     be those of the police department when she acted in any
     of her various capacities for the town.

     **Response:**  This statement is irrelevant, assumes facts
     not in evidence, and is vague and ambiguous. The
     plaintiff disputes that her opinions were perceived to be
     those of the police department or that she did anything
     to confuse others about the capacity in which she voiced
     her opinions. See Exhibit D, Mahieu Affidavit; Exhibit F,

                                                              10

Depo., Chief Archbald, at 39, 41-42; and Exhibit C, Depo., Karowski, at 104-105, 106-107. The defendants do not assert that the plaintiff had any duty to speak to the Chief about opinions she voiced at Finance Committee meetings or as Town Treasurer. The plaintiff disputes that she had any duty to speak to the Chief about opinions she voiced at Finance Committee meetings or as Town Treasurer.

18. The plaintiff was aware that in the summer of 2003, the Town Clerk presented a memo to the Board of Selectmen regarding several positions in the Town, including police secretary, where the Board had the power to reappoint but had failed to so in the past year or two.

**Response:**  The plaintiff discovered through her own research that the Select Board had voted to let the Chief appoint the police secretary, and that the Select Board never had formally rescinded that vote. The Chief testified that the police secretary's position was not part of the appointment authority of the Select Board. The Chief appointed the police secretary from the time that the Chief started in that position until the time that the Select Board chose not to reappoint the plaintiff. See Exhibit F, Dep., Chief Archbald, at 16.

19.   There is no evidence that any defendant asked the Town
      Clerk to find a way to make the police secretary an
      appointed position nor is there evidence that the Town
      Clerk provided the information to the Select Board
      knowing it did not want to reappoint the plaintiff.

      **Response:** The statement is overbroad, so the plaintiff
      **disputes** it. Direct and circumstantial evidence in this
      case would permit a reasonable jury to find that the
      Select Board had delegated the authority to hire the
      police secretary to the Chief. A reasonable jury could
      find that when the plaintiff's criticism annoyed the
      Select Board, the Select Board attempted to get the Chief
      to turn against the plaintiff. A reasonable jury could
      find that when the Chief found the complaints against the
      plaintiff to be unfounded, the Select Board rescinded the
      Chief's authority to hire the police secretary, so that
      the Select Board could retaliate against her directly.

20.   The plaintiff never lost any time from her job as police
      secretary nor any income as a result of any conduct on
      the part of the defendants.

21.   The plaintiff claims that she was uncomfortable going out
      after she was not reappointed, embarrassed and depressed,

however, she never sought help for her depression, nor was she ever medicated for her depression.

**Response:**  The plaintiff agrees that she was uncomfortable going out after she was not reappointed, embarrassed and depressed. The plaintiff never said that she was clinically depressed; she used the term "depressed" in its lay sense. She did seek help for her emotional reaction, but she did not receive medication. Defendant Morris observed that she was very upset when he informed her that the Select Board had not reappointed her. See Exhibit G, Depo., Morris, at 104-105; Exhibit C, Depo., Karowski, at 137, 148-151; Exhibit H, Plaintiff's Affidavit.

22.  Majorie Dunphy was the elected Town Assessor at all times relevant to this matter and had held that position for 14 years.

23.  Dunphy had also been a member of the Town's Board of Appeals.

24.  Dunphy worked across the hall from the plaintiff in the Town Assessor's Office.

**Response:**  Dunphy, at some point, worked on the other side of a half-wall dividing a larger space. See Exhibit I, Depo., Dunphy, at 8-9.

13

25.  The shared office was near the Town Collector's Office.

**Response:**  *Id.*

26.  Theresa Barstow was the Town Collector in 2002-2003.

27.  Dunphy had complained to Morris or to the chair of the
     Police Commissioner (*sic*) on the Select Board because
     people in the Treasurer's office were being discussed by
     the plaintiff and references made about people with
     ongoing criminal cases. Dunphy wanted Morris as the
     police liaison to address it.

**Response:**  This paragraph overstates the information.
Dunphy remembered only one conversation. That
conversation occurred between Maxine Schmidt, the Health
Agent, and the plaintiff. Maxine Schmidt initiated it.
Maxine Schmidt had read in a newspaper that a certain
person was incarcerated. Because she needed to know for
her job whether the person was still incarcerated, she
asked the plaintiff. The plaintiff referred her to the
police department. See Exhibit E, Schmidt Affidavit;
Exhibit I, Depo., Dunphy, at 16; Exhibit C, Depo.,
Karowski, at 43, 51.

28.  Dunphy recalled at her deposition that Town residents
     were discussed regularly by the plaintiff and in
     particular she remembered the name of one Town resident

who had been charged with a crime and was being discussed by the plaintiff.

**Response:** The plaintiff incorporates her response to paragraph 28 as her response to this statement.

29. Dunphy also complained about the plaintiff's non-police duties to Morris, specifically that taxpayers were being discussed between the plaintiff and Barstow.

**Response:** This statement is irrelevant. Moreover, there is nothing wrong with the Town Treasurer and the Town Collector discussing taxpayers in the course of their occupations. See Exhibit I, Depo., Dunphy, at 17-18.

30. Dunphy overheard conversations between the plaintiff and other Town employees and stated that these were not all related to matters concerning the Town Collector or Town Treasurer's business.

**Response:** The plaintiff disputes this statement as too vague and ambiguous to permit a response. The fact that two people who work together may have had personal conversations unrelated to work is meaningless, and had nothing to do with plaintiff's performance as police secretary. Dunphy failed to remember any details of any of the conversations which allegedly occurred. See Exhibit I, Depo., Dunphy, at 17-18.

15

31.  Dunphy spoke to the Chief after a town meeting and told
     him that she was concerned that a criminal investigation
     was being discussed in the Collector's office.

     **Response:**  The plaintiff and the Chief discussed the
     conversation about the individual who had been
     incarcerated, and the Chief determined that no breach of
     confidentiality had occurred. See Exhibit F, Depo, Chief
     Archbald, at 105.

32.  The Chief received verbal complaints from police officers
     as well as a complaint from the Select Board regarding
     the plaintiff.

     **Response:**  This statement is too vague and ambiguous to
     warrant a response. However, the Chief's evaluations of
     the plaintiff indicate that he spoke to the plaintiff
     about any complaints and resolved them to his
     satisfaction. See Exhibit B, Evaluations; See Exhibit F,
     Depo., Archbald, at 84-85, 102-103.

33.  The Chief had been told that the plaintiff was discussing
     non-police business while at work as the police secretary
     and was aware that visitors would do non-police business
     in the police station during the hours the plaintiff was
     working as police secretary.

**Response:** This sentence is incomplete, out-of-context, and misleading so the plaintiff **disputes** it. The Chief knew that the plaintiff conducted non-police, Town business from time to time at the request of members of the Select Board, particularly defendant Morris, and other town employees and officials. The Chief permitted the plaintiff to conduct non-police, Town business, and the plaintiff worked extended hours to make up the time. See Exhibit F, Depo., Chief Archbald, at 29-30, 35-36.

34. Prior to July 2003 the Chief discouraged the plaintiff from conducting non-police business at the station.

**Response:** This sentence is incomplete, out-of-context, and misleading, so the plaintiff **disputes** it. In 1999, the Chief asked the plaintiff to be more sensitive to the presence of the full-time police officer in the station when she conducted non-police, Town business at the station. The plaintiff agreed, and the matter was resolved. The plaintiff's performance of non-police, Town business at the police station did not affect the Chief's evaluations of the quality of the plaintiff's work. When defendant Morris raised the issue again in 2003, the Chief did nothing about it because it was not significant

to him. See Exhibit F, Depo., Chief Archbald, at 32-33, 34-36.

35. Prior to the July, 2003 letter, Morris, who was the police department liaison at the time, complained to the Chief that there was excessive conversation going on during the day about Town business unrelated to police matters and that the entire Select Board was concerned about it.

**Response:** This statement is incomplete, out-of-context, and misleading, so the plaintiff **disputes** it. According to the Chief's testimony and evaluations of the plaintiff, the issue of performing Town business unrelated to the police matters arose in 1999 and 2001. Despite this issue, defendant Morris entered the words, "Good job, Karen" in the box for comments by the Select Board. The Chief and the plaintiff apparently resolved the issue, and there is no mention of it in the Chief's evaluation of the plaintiff for the 2003 fiscal year (written July 2, 2004.) The Chief also noted that officers spoke well of the plaintiff and that he had received no complaints from members of the public about her performance. In fact, the Chief generated complimentary letters about her performance. See Exhibit

B, Evaluations; Exhibit F, Depo., Chief Archbald, at 23, 24.

36.  The Chief took no action with respect to Morris' complaint although he believed he was expected to take an action.

Response:  The plaintiff **disputes** this statement because it is incomplete and misleading. The Chief's evaluations of the plaintiff for fiscal 2003 state that he spoke with her about focusing on police business while she was in the police station as the police secretary, and that the plaintiff was following his direction. The Chief also stated that he had not received any complaints from officers or from the public about the plaintiff's work. The Chief did nothing about it because it was not significant to him. See Exhibit F, Depo., Chief Archbald, at 32-33, 34-36.

37.  After the aforementioned meeting with Morris, the Chief left with a clear understanding that the Select Board had gotten information the plaintiff was engaging in unrelenting criticism of the Select Board.

Response:  The plaintiff **disputes** this statement because it is unclear when "the aforementioned meeting" took place. The only mention of "political wrangling" occurs

in the 2000 evaluation. The Chief expresses concern that the "inner political wrangling of the Town and persons with whom she does not agree" may overwhelm the plaintiff. Curiously, defendant Morris writes in the plaintiff's evaluation for that year: "Thanks for your hard work."

38.   The Chief did not discuss this meeting with the plaintiff nor did he make any written notes into her personnel file with respect to this conversation.

39.   Morris also had a conversation with the Chief about the Plaintiff inappropriately representing the police department. (Internal reference omitted.) Morris complained to the Chief that the plaintiff would inappropriately express strong opinions while acting in her official capacity on the Finance Committee which the Select Board considered acts outside the scope of her job.

**Response:** This statement is an admission by defendant Morris that he attempted to adversely affect the terms and conditions of plaintiff's employment because she had engaged in constitutionally protected, political speech. Morris admits that he spoke for the entire Select Board,

the other members of which were defendants Haskell and
Cerreta.

40.  A previous board member, Bertle Leander, told the Chief
he was concerned over the "many hats" the plaintiff wore
and her expressing opinions outside the scope of her
position.

**Response:**  This fact is irrelevant to the matter at hand.
Mr. Leander was not a member of the Select Board at any
time relevant to this suit. Further, the Chief stated
that he had not received complaints from members of the
public in 2003-2004. See Exhibit B, 2004 Evaluation.

41.  Morris also complained to the Chief that the plaintiff
had discussed confidential police information with at
least two other Town employees, Maxine Schmidt and Tess
Barstow.

**Response:**  The plaintiff does not dispute that Morris may
have complained to the Chief that the plaintiff discussed
confidential police information with at least two other
Town employees, Maxine Schmidt and Tess Barstow. The
plaintiff does **dispute** the substance of the statement.
She did not discuss confidential information with Maxine
Schmidt and Tess Barstow. See Exhibit E, Schmidt
Affidavit; Exhibit C, Depo, Karowski, at 46-47.

21

42.  Morris complained to the Chief as well about a complaint
     he had received by a person on the custodial staff
     regarding the plaintiff.

**Response:** The plaintiff does not dispute that Morris
complained to the Chief about a complaint he had received
by a person on the custodial staff regarding the
plaintiff. However, the plaintiff does **dispute** the
substance of the statement. First, neither defendant
Morris nor any other member of the Select Board
investigated the truth of the statement. Second, the only
complaint involving a janitor occurred in 1999, and it
was resolved when the janitor in question became the
full-time janitor at the Town offices where plaintiff got
along with him fine (See Exhibit C, Depo., Karowski, at
98), and another person was engaged to perform janitorial
services at the police station. See Exhibit B, 2000
Evaluation. Third, any complaint was made by the
plaintiff about the janitor in question failing to
perform all of his duties.

43.  Officer Scoble and Sergeant Graham both spoke to the
     Chief about wanting the plaintiff to make filing
     paperwork as the police secretary a priority and did not

22

think the plaintiff was doing this. The Chief testified that he had it "corrected."

**Response:** The plaintiff **disputes** this statement because it is overbroad, incomplete and misleading. The Chief testified that the officers thought that paperwork should take priority and "should be filed **first thing in the morning** (emphasis supplied), and that they did not think it was happening and wanted [the Chief] to talk to her." There is no evidence that the plaintiff was not filing the paperwork or was derelict in her duties. See Exhibit F, Depo., Chief Archbald, at 85.

44. Haskell also spoke to the Chief about the plaintiff's "relentless criticism" of the Board.

45. In the plaintiff's 2000 evaluation, the Chief made a general reference about the plaintiff being involved in "inner political wranglings of the Town and persons to whom she does not agree.

46. The Chief never wrote any of the complaints received by the Select Board regarding the plaintiff's conduct as police secretary into the plaintiff's personnel record.

47. Morris was a Selectman during all times relevant to this matter.

23

48.  Morris served as the police liaison at all times relevant
     to this action. As the police liaison, he was the contact
     point for the Police Chief who would bring concerns of
     the Chief to the Board and vice versa.

49.  Morris was responsible for the initial draft of the
     letter to the plaintiff about her non-reappointment in
     July, 2003, and presented the draft to the other Board
     Members.

50.  Morris remembered seeing in the plaintiff's evaluation by
     the Chief the statement of concern regarding her
     discussing political issues at the police station
     unrelated to Town business and while working as police
     secretary.

     **Response:**  The plaintiff **disputes** that the Chief made any
     statement of concern in one of her evaluations regarding
     her discussing political issues at the police station.
     The Chief did state in the 2000 evaluation that he was
     concerned about the "inner political wrangling" of the
     Town in 2000.

51.  Morris voiced concern to the Chief over the plaintiff's
     raising issues concerning police business at Finance
     Department (*sic*) meetings as well as issues Morris

                                                              24

believed had already been discussed and resolved with the Chief.

**Response:** In this statement, defendant Morris admits that he spoke with the plaintiff's immediate supervisor, the Chief, about constitutionally protected speech in which the plaintiff had engaged as an elected official of the Town. Whether or not the Select Board and the Chief had "resolved" issues is irrelevant to the plaintiff's constitutionally protected right to discuss them in her capacity as an elected official of the Town.

52. Morris voiced further concern to the Chief that he believed that it was the Chief's job, as the spokesman for the department, and not the police secretary's job to raise issues to the Select Board concerning police matters.

**Response:** The plaintiff incorporates her response to paragraph 51 as her response to this statement. The plaintiff further says that it was the job of a member of the Finance Committee to raise issues to the Select Board concerning police matters whether the Chief and the members of the Select Board had "resolved" them among themselves. See, G.L. c. 39, §16.

53. Morris was unclear at times whether the plaintiff was speaking as a member of the Finance Committee or as the police secretary.

**Response:** The plaintiff **disputes** this statement because it is disingenuous and misleading. There is no evidence that defendant Morris or any member of the Finance Committee asked the plaintiff to clarify in what capacity she spoke. In fact, when the plaintiff spoke as other than a member of the Finance Committee at Finance Committee meetings, she identified the capacity in which she spoke. See Exhibit C, Depo., Karowski, at 104-107.

54. Morris never criticized the plaintiff for any criticism she made in private conversations and when not acting in the scope of her employment.

**Response:** The plaintiff disputes this statement. The letter speaks of "unrelenting criticism" without qualification. There is no evidence that the plaintiff criticized the Select Board when she was acting in the scope of her employment as police secretary. Even if the plaintiff criticized the Select Board's handling of Town business while she was acting in the scope of her employment as police secretary, there is no evidence that she criticized the Select Board's handling of police

26

business while she was in the police station acting in her capacity as police secretary. Contrast Exhibit J, Depo., Beattie, at 40.

55. Morris expected the Chief as the plaintiff's direct supervisor to talk to her about his concerns.

**Response:** In this statement defendant Morris admits that he sought to affect the terms and conditions of plaintiff's employment because of plaintiff's constitutionally protected speech as an elected official.

56. Morris spoke to the Chief about the custodian of the police station who was leaving because the work environment was unpleasant and who specifically had issues with the way plaintiff treated him.

**Response:** The plaintiff **disputes** the substance of this statement. In fact, the custodian left his job at the police station because the work at the Town offices occupied him full-time. Furthermore, the plaintiff and this custodian got along well at the Town offices. See Exhibit C, Depo., Karowski, at 98.

57. Morris expressed to the Chief in two conversations that the tensions with the plaintiff as police secretary were

contributing to the tension between the Select Board and the police department.

**Response:** The plaintiff agrees that defendant Morris sought to affect the terms and conditions of plaintiff's employment because of her constitutionally protected speech about the manner in which the Select Board performed its duties, including those which concerned the administration and management of the police department.

58. Morris expressed to the Chief that the perception was that the plaintiff's views as police secretary on police matters and the Select Board's policies must be the Chief's views as well and that this was not good for the relationship between the Select Board and the police department.

**Response:** The plaintiff agrees that defendant Morris sought to affect the terms and conditions of plaintiff's employment because of her constitutionally protected speech about the manner in which the Select Board performed its duties, including those which concerned the administration and management of the police department. Furthermore, the plaintiff was not a policy-making employee of the police department so that her opinions of the administration of the police department which she

expressed as an elected Town official and not in the
police department while she was working as police
secretary were constitutionally protected political
speech.

59. Morris raised the issues of appearance of conflict of
interests (*sic*) in terms of the police secretary voting
on any motions at the Financing (*sic*) Committee related
to the police department.

**Response:**  The plaintiff **disputes** this statement. There
is no evidence that defendant Morris or any other member
of the Select Board complained to the Ethics Commission
established pursuant to G.L. c. 268A about any appearance
of conflict of interest. The plaintiff further says that
the Select Board never investigated any apparent conflict
of interest, did not inform her of the apparent conflict
of interest, did not memorialize it in any of her
evaluations, and did not grant her a hearing on the
issue. See Exhibit C, Depo., Karowski, at 99, 104-105.

60. Morris believed the plaintiff had the right to criticize
the decision of the Select Board involving the police
department as a private citizen but not in her capacity
as police secretary.

**Response:**  The plaintiff **disputes** this statement of fact. First, defendant Morris is a lawyer. See Exhibit G, Depo., Morris, at 5-6. He knew or should have known that the plaintiff's exercise of her right to freedom of speech is constitutionally protected and clearly established at all times relevant to this matter. Second, the statement commits the fallacy of the excluded middle. The plaintiff was more than either the police secretary or a private citizen. She held two elective offices: member of the Finance Committee and Town Treasurer. In either capacity she could speak to the administration of Town affairs, including those of the police department, by the Select Board. See, e.g., G.L. c. 39, §16, which defines the duties of the Finance Committee.

61.  Morris believed it made an impression that there was dissention with (*sic*) the police department and that the Chief was unhappy with the Select Board's decision and that the police officers may unhappy as well.

**Response:**  The plaintiff **disputes** this statement because it is vague, ambiguous and unsupported by any evidence. The pronoun, "it" has no antecedent. The phrase, "dissention with (*sic*) the police department" contains a typographical error: "dissention *within* the police

30

department". Defendant Morris' belief conflicts with the
statements in the plaintiff's evaluations. Defendant
Morris also admits that he did not attempt to
substantiate his belief; he made no investigation of the
existence of dissention within the police department. He
did not investigate how the public felt about the
cohesiveness of the police department. See Exhibit G,
Depo., Morris, at 46-47.

62. Morris informed the Chief that Dunphy had heard the
plaintiff talking to Barstow in the Collector's Office in
a voice that could easily be heard and in a public area
during business hours regarding the details of a recent
arrest.

63. Morris asked Dunphy to inform the Chief about this
directly.

64. Morris was aware that the plaintiff conducted non-police
business during her time as police secretary.

65. Morris' issue was not that the plaintiff was performing
Town business at the police station which was not related
to police work but rather he made the distinction between
Town business (e.g., payroll questions) and discussing

Town politics (e.g., complaining about what the Finance
Committee did the night before).

**Response:** The plaintiff **disputes** this statement because
Morris did not make the distinction involving the time,
place, manner and means of the criticism Karowski until
late in his deposition which occurred long after the
Select Board refused to reappoint the plaintiff to her
position. See Exhibit G, Depo., Morris, at 96-97.
Furthermore, in the plaintiff's 2003 evaluation,
completed in 2004, the Chief notes that, "Officers speak
well of their relationship with Karen and I have received
no complaints from the public about her work in the
department." There is no indication that the plaintiff
engaged in discussing Town politics while she was on duty
as police secretary. See Exhibit B, 2003 evaluation.

66. It was the general consensus that the plaintiff's public
discussion of confidential police business was the most
troubling concern of the defendants and that this fact
should not be in the July 10, 2003 letter for fear that
it would lead to further disclosure of confidential
information.

**Response:** The plaintiff **disputes** this statement. The
statement is a recent fabrication which has no predicate

in any of the testimony of the defendants or of other witnesses. In any event, were the Select Board to affect the terms and conditions of the plaintiff's employment adversely because of the alleged disclosure of confidential information, the Select Board should have held a hearing on the matter, perhaps in executive session, to determine the facts. The recently expressed fear of further disclosure is spurious; names need not have been used in the letter, as they were not in the depositions of the defendants. See, e.g., Depo. Exhibit K, Haskell, at 73.

67. David Haskell spent five terms as a Selectman and was a member of the Finance Committee.

68. While serving on the Finance Committee, Haskell believed that the plaintiff should have recused herself from certain votes having to do with the police department rather than lobbying and voting for those issues.

**Response:** The plaintiff **disputes** this statement because the record is devoid of evidence that Haskell brought the matter to the attention of the Finance Committee, the State Ethics Commission or the general public at the time

that these events allegedly occurred. See Exhibit K,
Depo., Haskell, at 32,

69. In his capacity as Selectman, Haskell was aware of
several concerns regarding the conduct of the plaintiff
in her position as police secretary.
**Response:** The plaintiff **disputes** this statement because
it is vague and ambiguous. Furthermore, defendant Haskell
never brought any of these alleged concerns to her
attention. Furthermore, the Chief's written evaluations
of the plaintiff do not memorialize any concerns about
which Haskell may have been aware.

70. Eric Cerreta was chairperson of the Select Board at all
times relevant to this matter.

71. The entire Select Board participated in the appointment
decision during Cerreta's tenure on the Board.
**Response:** The plaintiff **disputes** this statement. The
Chief appointed the plaintiff to her position as police
secretary, a position which she expected to retain as
long as her work remained good. See Defendants' Exh. 8,
at 35. In 2003, the Select Board withdrew the Chief's
authority to appoint the plaintiff to the position of

police secretary and arrogated that power to itself. See Exhibit F, Depo., Chief Archbald, at 16-17, 19.

72. The plaintiff was reappointed as police secretary on July 11, 2002 for one year.

73. Cerreta spoke with the Chief and told him that it was the Chief's job to talk to the Board about decisions the Board was making that the Chief was not comfortable with. **Response:** The plaintiff **disputes** this statement because the Chief does not remember the conversation, and the Chief's last evaluation of the plaintiff (in 2004) contains no reference to the alleged conversation. See Exhibit F, Depo., Chief Archbald, at 88-89.

74. Specifically, Cerreta told the Chief that he should be speaking on behalf of the police department at Finance Committee meetings and not have the administrative assistant be the police department's representative. **Response:** The plaintiff **disputes** this statement by incorporating her response to paragraph 73, above.

75. The Chief acknowledged to Cerreta that it had been a problem in the past and gave Cerreta the impression that he would look into the issue of the plaintiff's speaking on behalf of the police department. (Citation omitted.)

Cerreta believes that this conversation occurred sometime between January, 2003 and March, 2003.

**Response:**  The plaintiff **disputes** this statement because the Chief does not remember any conversation of this nature occurring. The plaintiff further **disputes** that she spoke "on behalf of" of the police department if the defendants intend that phrase to mean that she spoke in her capacity as police secretary rather than in her capacity as an elected member of the Finance Committee or in her capacity as the elected Town Treasurer. See Exhibit F, Depo., Chief Archbald, at 39-41; Exhibit G, Depo., Morris, at 28.[2]

76.  At the time of the failure to reappoint the plaintiff, the Board had known that the plaintiff had talked about an arrest made in Town.

**Response:**  The plaintiff **disputes** this statement because she did not talk about any arrest unless it was in the context of Town business; the plaintiff incorporates her response to paragraph 11 as her response to this statement.

---

[2] Defendant Morris does not recall the plaintiff ever saying that she spoke on behalf of the police department or that she was speaking as a representative of the police department or that she was speaking at the direction of the Chief for the police department. He also does not recall ever saying that she did not speak on behalf of the police department.

36

77.  Cerreta was aware that the Chief evaluated his employees
     in writing once a year and that the Chief had failed to
     include incidents regarding complaints about the
     plaintiff in her evaluation.

78.  Cerreta was aware of the issue with the custodian leaving
     his job because he could not work with the plaintiff.
     **Response:**  The plaintiff **disputes** this statement because
     the incident never occurred. The plaintiff incorporates
     her response to paragraph 42 as her response to this
     statement.

79.  Cerreta had heard complaints from police officers that if
     they didn't want anything to be talked about they should
     not talk about the subject in front of the plaintiff.
     **Response:**  The plaintiff **disputes** this statement because
     Cerreta testified that only one police officer had made a
     statement of that nature to him. See Exhibit L, Depo.,
     Cerreta, at 77.

80.  Cerreta was aware that the Chief had received criticism
     of the plaintiff prior to July 1, 2003.
     **Response:**  This statement is an admission by defendant
     Cerreta that the Select Board attempted to adversely
     affect the terms and conditions of plaintiff's employment

37

because she had engaged in constitutionally protected,
political speech. See Exhibit L, Depo., Cerreta, at 83:
"It was a general comment that I thought it was [the
Chief's] job to represent the police department and not
[the plaintiff's.]"

81.  The minutes of the Selectmen's meeting held July 24, 2003
reflect that a petition was given to Board regarding the
non-reappointment of the plaintiff.

82.  In a November 3, 2003 letter, the Board sent a letter
saying that it had voted to reappoint the plaintiff to
the police secretary's position for the remainder of the
fiscal year.

83.  The letter of reappointment asked that the plaintiff
recuse herself in the future from voting on and/or
discussing any issues which would violate G.L. c. 260,
§8A (*sic*).[3]

     **Response:**  The plaintiff **disputes** the implication in this
     statement that she had committed any violation of G.L. c.
     268A. There is no evidence that she violated any
     provision of G.L. c. 268A, or that the Select Board took

---

[3] The transcript contains a typographical error. G.L. c. 268A establishes a
State Ethics Commission to enforce conflict of interest laws which apply to
public officials.

any action to determine whether she had violated G.L. c. 268A. See Exhibit L, e.g., Depo., Cerreta, at 85, 110.

84. The letter also stated that the plaintiff must be clear in the future that if she speaks on police matters, she speaks for herself and not the department.

85. Cerreta had the impression that prior to the November 3, 2003 letter, that whenever the plaintiff spoke at a public meeting she gave the impression that she was speaking on behalf of the police department.

**Response:** The plaintiff **disputes** this statement because defendant Cerreta testified that he assumed that the plaintiff spoke on behalf of the police department. See, Depo., Cerreta, at 112. Furthermore, defendant Cerreta never challenged the plaintiff or sought clarification about in which capacity she spoke. *Ibid.,* at 112-114.

86. The November 3, 2003 letter also informed the plaintiff that during office hours as the police secretary, she was only to conduct police business and that while working as police secretary, she would refrain from contacting other Town employees to discuss non-police business.

87. Michael Beattie was an elected member of the Finance Committee and the local school committee. (Citation

omitted.) As a member of the Finance Committee he communicated with Cerreta and Morris about the plaintiff during 2002-2003.

88. Beattie told Cerreta that after several Finance Committee meetings, the plaintiff had spoken about the Select Board in a non-professional and unflattering manner.

    **Response:** The plaintiff **disputes** this statement because the deponent could not remember any of the particular statements that he characterized as non-professional and unflattering. See Exhibit J, Depo, Beattie, at 24. The plaintiff made some of the statements to which Beattie objected during Finance Committee meetings; some were made in the presence of the Select Board. See Exhibit J, Depo., Beattie, at 27.

89. Beattie could not tell in what capacity the plaintiff made her derogatory comments.

    **Response:** The plaintiff **disputes** this statement because: (1) one may fairly infer from Beattie's testimony that the plaintiff made many of the statements to which he objected during Finance Committee meetings; (2) Beattie never appeared confused about the capacity in which the plaintiff spoke; (3) the plaintiff told people which she

40

was speaking as the police secretary; (4) and, Beattie
never asked the Chair of the Finance Committee to rule
the plaintiff out of order. See Exhibit D, Affidavit,
Peter Mahieu; Exhibit C, Depo., Karowski, at 107.

90.  Beattie testified that the plaintiff criticized the
     Select Board quite often in his presence.

**Response:**  The plaintiff **disputes** this statement because
it is misleading. The events about which Beattie
testified and to which this statement refers took place
in meetings of the Finance Committee, not in his presence
only. See Exhibit J, Depo., Beattie, at 27. The plaintiff
also **disputes** the relevance of this statement. There is
no evidence that Beattie talked to the plaintiff about
non-police business and non-Town business while she was
acting in her capacity as police secretary. Beattie met
with the plaintiff as the Assistant to the Town
Treasurer, and not while she was working as police
secretary. Furthermore, Beattie was the plaintiff's
assistant for about a year after she took office as Town
Treasurer in 1998. See Exhibit C, Depo., Karowski, at 22,
24-25, 27-28. The Chief evaluated the plaintiff several
times after Beattie left his position as Assistant to the
plaintiff as she was the Town Treasurer. The evaluations

41

did not indicate that the plaintiff was behaving
inappropriately while she carried out her duties as
police secretary.

91.   Beattie told the secretary of the Finance Committee,
Linda Rowley, that he was upset with comments that the
plaintiff made and was going to tell the Board of
Selectmen.

92.   Beattie remembers talking to Morris at least three times
concerning the plaintiff.

93.   Beattie testified that he was the plaintiff's assistant
when she was Treasurer.

**Response:**  The plaintiff agrees that Beattie was her
assistant, but **disputes** that he was her assistant during
any period relevant to this matter. He was her assistant
for about a year and one-half from 1998. See Exhibit C,
Depo., Karowski, at 27-28.

94.   Beattie testified that every time he worked with the
plaintiff, she had a criticism of the Select Board.
(Citation omitted.) Beattie mentioned this fact to
Cerreta and to Morris.

95. Beattie characterized the criticism as a "constant tirade" that if the Select Board didn't behave the way the plaintiff wanted, she complained about it.

96. Beattie considered the plaintiff's statements unprofessional, tiring and annoying. Beattie did not tell the plaintiff how he felt because she was his boss.

    **Response:** The plaintiff does not dispute Beattie's opinion of her statements. However, the plaintiff does **dispute** that he had any basis for his opinion. Beattie testified that the plaintiff's criticisms as based upon votes that took place or comments that members of the Select Board made. See Exhibit J, Depo., Beattie, at 43-44.

97. Beattie believed that many of the plaintiff's comments about the Select Board seemed hostile.

98. Among the things Beattie remembered the plaintiff to complain about were the budget, police department business, and about the Select Board's administrative assistant whom she referred to as lazy.

99. Beattie was aware that the plaintiff talked about police department business inappropriately.

43

**Response:**  The plaintiff **disputes** this statement because it is vague, ambiguous and based on hearsay. Beattie refers to the incident of alleged breach of confidentiality. Beattie says that Dunphy told him about it. See Exhibit J, Depo., Beattie, 50-51. He asserts that he heard the same thing from other people, but he does not remember from whom, where or when. *Id.* He does not remember talking to any of the Selectmen about the alleged breach of confidentiality. *Ibid.*, at 52.

100. When the plaintiff was police secretary, Beattie talked constantly to her on the job about non-police business as well as non-Town business.

**Response:**  The plaintiff **disputes** the relevance of this statement. There is no evidence that Beattie talked to the plaintiff about non-police business and non-Town business while she was acting in her capacity as police secretary. Beattie met with the plaintiff as the Assistant to the Town Treasurer, and not while she was working as police secretary. Most of the meetings were at the plaintiff's home. See Exhibit J, Depo., Beattie, at 40. Furthermore, Beattie was the plaintiff's assistant for about a year after she took office as Town Treasurer in 1998. See Exhibit C, Depo., Karowski, at 22, 24-25,

44

27-28. The Chief evaluated the plaintiff several times after Beattie left his position as Assistant to the plaintiff as she was the Town Treasurer. The evaluations did not indicate that the plaintiff was behaving inappropriately while she carried out her duties as police secretary.

101. It was common knowledge in the Town that the plaintiff was doing non-police business while functioning as the police secretary.

**Response:** The plaintiff **disputes** this statement because it is hearsay and it is inconsistent with Beattie's testimony at his deposition. Beattie testified that he did not talk with any of the Selectmen about the plaintiff's having broken any rule of the police department. See Exhibit J, Depo., Beattie, at 51-52.

Dated at Northampton, May 30, 2006.

Respectfully submitted,
The Plaintiff by her attorney

/s/ *Harry L. Miles*
Harry L. Miles, of
*Green, Miles, Lipton & Fitz-Gibbon, LLP*
77 Pleasant Street, P.O. Box 210
Northampton, MA 01061-0210
Voice:  413.586.8218
Fax:    413.584.6278
E-mail: harrymiles@aol.com
BBO#:   345800

Certificate of Service:    I, Harry L. Miles, certify
that today, May 30, 2006, I have filed this document
electronically, so that it will be served upon counsel of
record for the defendants.


/s/ *Harry L. Miles*