UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:03-CV-30314-MAP

| | |
|---|---|
| KAREN KAROWSKI,<br>    Plaintiff | )<br>)<br>) |
| vs. | )<br>) |
| ERIC CERRETA, DAVID HASKELL,<br>CHRISTOPHER MORRIS, and<br>THE INHABITANTS OF THE TOWN OF<br>WILLIAMSBURG,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM REGARDING THE IMPACT OF *GARCETTI V. CEBALLOS*, - U.S. -, 126 S. CT. 1951, - L. ED. 2D - (2006)**

**INTRODUCTION**

This Supplemental Memorandum (hereinafter "SM") responds to the Court's invitation to supplement its Motion for Summary Judgment subsequent to the publication of *Garcetti v. Ceballos,* 126 S. Ct. 1951 (2006).

**FACTUAL BACKGROUND**

The defendants[1] incorporate by reference herein their Statement of Material Facts filed previously pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1. Particularly in light of the *Garcetti* opinion, the defendants reiterate that the capacity in which the plaintiff spoke (private citizen, finance committee member, Town Treasurer or public employee/police secretary) is critical to the First Amendment analysis and that there was confusion created by the plaintiff's failure to identify in what capacity she spoke when she criticized her employer and/or when she discussed or disclosed information she received in the scope of her employment as police

---

[1] The defendants report, sadly, that co-defendant David Haskell passed away subsequent to the filing of their Rule 56 Motion.

456949

secretary. On these facts, even if disputed, the *Garcetti* decision must be construed to support summary judgment in favor of the defendants.

## DISCUSSION

Although *Garcetti* had not yet been published when the original Motion for Summary Judgment was filed, the defendants still argued that the failure of the plaintiff to identify the capacity in which she spoke affected the legal analysis with respect to the then existing First Amendment jurisprudence. See *Pickering v. Board of Ed. of Township High School Dist. 205*, 391 U.S. 563 (1968). *Garcetti* has clearly shifted the *Pickering* balancing test in favor of a public employer's right to function efficiently where a public employee speaks not just as a citizen but as an employee of the government. More importantly, perhaps, with respect to the instant action is that *Garcetti*, including the dissenting opinions, has underscored the unsettled nature of when a public employee's speech may be protected and when it will be seen as speech made pursuant to one's official duties. As such, and in light of the "hybrid" nature of the plaintiff's public functions, it is not surprising that the defendants reasonably believed they could choose not to reappoint the plaintiff to her job as police secretary where she repeatedly criticized them and/or disclosed confidential information about things the defendants reasonably believed was information obtained as part of the plaintiff's official duties as police secretary.

Further, the plaintiff acknowledges that the instant action is distinguishable from *Garcetti* and from much of the subsequent law cited in her supplemental memorandum because the speech at issue herein involves a "hybrid" situation where the plaintiff was a public employee but also wore multiple other "hats". See Plaintiff's Supplement Memorandum at 6. The plaintiff alleges that, pursuant to *Fuerst v. Clarke*, 2006 WL 2074818 (7th Cir.), the proper First Amendment analysis post *Garcetti* supports the proposition that a court must look to the "hat" an individual is wearing to determine whether a person is speaking as a private citizen or as a public

424946

employee on a subject within that person's job description. While this is a fair reading of *Fuerst*, any further reliance on that decision would be misplaced. The thrust of the defendants' underlying argument is that when the plaintiff spoke and criticized her employer, she was not identifying in what capacity she spoke and her speech was often related to topics within her functions as police secretary. This is utterly unlike *Fuerst* where not only was it clear that the plaintiff was speaking in his capacity as a union representative, but, that as a union representative it is understood that speech will often be critical of management's position. On the other hand, the defendants in this action were not able to clearly identify the "hat" which the plaintiff wore when she criticized and/or discussed information obtained, at least in part, in the scope and as part of her duties as police secretary. Because of this, *Garcetti* and *Fuerst* are distinguishable from the instant action. Nevertheless, *Garcetti* lends support to the defendants' arguments, particularly in the area of qualified immunity.

The *Garcetti* Court found dispositive that expressions the plaintiff made were made pursuant to his employment duties. See *Garcetti v. Ceballos,* 126 S. Ct. at 1959-1960. The *Garcetti* Court described the job functions that the plaintiff had, the duties he was expected to perform and the fact that he had acquired and disclosed the speech at issue as part of his job duties. *Id.* at 1955-1956. What is clear in the instant action is that at least some of the speech at issue was related to information received and disclosed as part of the plaintiff's position as police secretary. What makes the instant action problematic, however, is that because there may be "crossover" with respect to information received and disclosed and because the plaintiff may have been wearing other hats when she received and disclosed information there is not a direct analogy to *Garcetti*. Despite this distinction, the *Garcetti* Court was clear that:

> Ceballos did not act as a citizen when he went about conducting his daily professional activities … The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance.

424946

> This result is consistent with our precedents' attention to the potential societal value of employee's speech. [Citation omitted]. Refusing to recognize First Amendment claims based on government employees' work product does not prevent them from participating in public debate. The employees retain the prospect of constitutional protection for their contributions to the civic discourse. This prospect of protection, however, does not invest them with a right to perform their jobs however they see fit.
>
> Our holding likewise is supported by the emphasis of our precedence on affording government employers sufficient discretion to manage their operations. Employers have heightened interest in controlling speech made by an employee in his or her professional capacity…

*Id.* at 1960.

Likewise in the instant action, information the plaintiff received in her position as police secretary regarding individuals who might be in custody or other internal Police Department information, should not be protected. Also, criticism concerning the Quinn Bill or other police department matters, obviously is information that came from not just the political positions the plaintiff held but from her work as police secretary. The *Garcetti* Court also said that "when a public employee speaks pursuant to employment responsibilities, however, there is no relevant analog to speech by citizens who are not government employees." *Id.* at 1961. This is critical, because in the First Amendment context, it makes an employee who would otherwise be subject to discipline or even termination, protected and given job security that otherwise does not exist. Neither party can point to a case in which a public employee claims First Amendment protection when she is wearing admittedly four different hats, two political, one private citizen and one public employee. However, to adopt the plaintiff's view of this case, the fact that she happened to be an elected official as well as a public employee provides her with the right to a job for life so long as her criticism falls within the scope of the political hat she is wearing when she speaks would seem to contravene the majority's opinion in *Garcetti*.

As the defendants have stated previously in this Supplemental Memorandum, where the *Garcetti* opinion is most helpful to the defendants is in a factual scenario such as the one in the

424946

instant matter, where the defendants were faced with evidence that the plaintiff did not identify the hat she was wearing when she criticized the police department and Select Board or when she disclosed confidential information she had because of her position as police secretary. It seems beyond dispute that the law, post *Garcetti*, is still not clearly established as to how to consider speech made across functions where it is unclear in what capacity a public employee speaks when she speaks about subjects within the realm of her job duties. As such, this Court should not have trouble finding that even if the speech the plaintiff claims should have been protected speech under the First Amendment, the defendants could reasonably have believed that the existing law allowed them to opt not to reappoint her to her job as police secretary given the facts as they understood them.

## CONCLUSION

For the reasons articulated herein, the defendants state that the *Garcetti* opinion bolsters their underlying arguments and even more strongly provides a basis for this Court to find the defendants protected by qualified immunity.

THE DEFENDANTS,
ERIC CERRETA, DAVID HASKELL,
CHRISTOPHER MORRIS, AND
THE TOWN OF WILLIAMSBURG

By  */s/ Nancy Frankel Pelletier*
Nancy Frankel Pelletier, Esq.

By  */s/ Dorothy Varon*
Dorothy Varon, Esq., both of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301 Fax (413) 785-4658
BBO No.: 544402
BBO No.: 629609

424946

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 7th day of August, 2006.

                                                        */s/ Nancy Frankel Pelletier*
                                                  Nancy Frankel Pelletier, Esq.

424946